Willie FOSTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–81–0416–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 16, 1982.
Discretionary Review Refused
May 25, 1983.

William Burge, Houston, for appellant.

Timothy Taft, Houston, for appellee.

## OPINION

EVANS, Chief Justice.

After a joint trial, a jury convicted the appellant and his two co-defendants, Herman Foster and Frank Moore, of aggravated robbery. The jury assessed appellant's punishment at 99 years imprisonment and a $5,000 fine.

A Houston police officer, on radio patrol, observed the appellant sitting in the driver's seat of a yellow Oldsmobile Cutlass parked next to a Republic of Texas Savings building. He followed the vehicle when it drove away and, checking the registration on the vehicle's license plates, he found the plates registered to another vehicle. After observing the vehicle run through a stop sign, he pulled the car over and placed the driver under arrest. When the officer looked into the vehicle, he saw the butt of a gun sticking out from under the driver's side of the front seat, and he placed the other two occupants under arrest. All three men were returned to the savings building offices for purposes of identification. A deputy sheriff, who had arrived at the scene of the stopped vehicles, obtained a search warrant and subsequently conducted a search of the Oldsmobile. He testified that he found two pistols, a ski mask, gloves, and teller boxes containing money. At trial, the arresting officer identified the appellant as the driver of the vehicle and his co-defendants, Herman Foster and Frank Moore, as the other two persons in the car.

■ In his first ground of error, the appellant contends that the trial court committed reversible error by admitting into evidence the fruits of the search of the vehicle. The appellant concedes that the search was made pursuant to a warrant, but he argues that the record does not show that the State made the requisite proof as to the legality of the warrant.

The appellant's court-appointed counsel *on appeal* recognizes that in order to obtain appellate review of the search warrant and supporting affidavit, it was necessary that a bill of exceptions be made in the trial court, offering copies of such documents. *Cannady v. State* 582 S.W.2d 467 (Tex.Cr. App.1979). However, he argues that because he was not appointed until after the appeal was in progress, and since he was unaware, until he read the appellate record, that the State had failed to prove the contents of the affidavit and warrant, the appeal should be abated and the cause remanded to the trial court to permit the late filing of a bill of exceptions.

The appellant's motion to abate and remand is denied. The record shows that at the hearing on appellant's motion to suppress, no objection was made on behalf of appellant that the search warrant was insufficient, and the only objection was that the stop and arrest was illegal for want of probable cause. A bill of exceptions not timely filed in the trial court will not be reviewed on appeal. *Webb v. State,* 460 S.W.2d 903 (Tex.Cr.App.1970); *Ortega v. State,* 493 S.W.2d 828 (Tex.Cr.App.1973). In this case there has been no showing of good cause for the appellant's failure to timely file a bill of exceptions attacking the sufficiency of the warrant. The first ground of error is, therefore, overruled.

■ In his second ground of error, raised in a supplemental brief, the appellant contends that he had ineffective assistance of counsel at the punishment stage of trial. Although this ground is not properly presented for review, we have decided to consider it in the interest of justice. Tex. Code Crim.Pro.Ann. 40.09, Section 13.

With commendable candor, the appellant's court-appointed counsel on appeal concedes that the evidence clearly established the appellant's guilt and, in his brief, he recognizes that during the guilt stage of the proceedings, appellant's trial counsel "made the best of a bad situation." However, counsel on appeal further contends that, during the punishment stage of trial, the record demonstrates an entirely different quality of representation.

The State called five witnesses to testify about the general reputation of the three defendants for being peaceful and law abiding citizens.

The first witness, Debbie Marquis, testified that she became acquainted with appellant's co-defendant, Herman Foster, when he came into her Bayshore Savings office about 10:40 a.m., on November 13, 1980; that she knew Foster's reputation for being a peaceful and law abiding citizen; and that such reputation was bad. On cross-examination appellant's trial counsel, who was also counsel for the other two defendants, established that the witness was not really acquainted with the appellant, "He just walked into our office one day."

The second witness, Leuse Compa, branch manager of San Jacinto Savings, testified that she had come into contact with appellant's co-defendant, Frank Moore, at approximately 9:25 a.m. on February 4, 1981; that she was familiar with his reputation and that his reputation was bad. On cross-examination, appellant's counsel established that the witness had no idea where appellant lived or what his reputation was where he resided.

The third witness, Orena Atwell, testified that she had come into contact with Frank Moore and the appellant at about 9:25 a.m. on February 4, 1981 at San Jacinto Savings: that she knew the reputation of the men for being peaceful and law abiding citizens, and that their reputation was bad. On cross-examination the following occurred:

Q. What community does he reside in?
A. Well, he came in and robbed us.
Q. What community does he reside in?
A. Who?
Q. Willie Foster.
A. His community?
Q. Yes.
A. I don't know his community.
Q. You don't know where he lives?
A. No.
Q. How do you know the reputation in his community of the place where he resides?
A. Well, he came in—

THE COURT: Just answer what he asks and wait for the next question.

Q. Do you know anybody that lives in the community where he resides?

A. No.

Q. And you're telling the Court and jury that you know his reputation as being bad in the community where he lives and you don't even know where he lives?

A. Yes.

MS. DAUGHTREY: I would ask him not to badger the witness and allow her to answer the questions.

THE COURT: She has the opportunity. Go ahead.

Q. Have you been in his home?

A. No.

Q. Have you been anywhere where he goes to school or work?

A. No.

A fourth witness, David Graver, a branch manager at Spring Branch Savings and Loan, testified that he had come into contact with Willie Foster at about 9:57 a.m. on February 23, 1981; that he knew his reputation in the community in which he resided for being a peaceful law abiding citizen and that his reputation was bad. On cross-examination, trial counsel for the appellant established that the witness had not associated with any of the people in the community where the appellant resided.

The fifth and final witness, Pamela Nolin, an employee of Spring Branch Savings and Loan, testified that she came into contact with the appellant at about 10:00 a.m. on February 4th, 1981; however, she stated that she did not know his reputation in the community in which he resided for being a peaceful and law abiding citizen.

The first two witnesses for the State did not mention the appellant, nor did they state that any of the defendants had robbed them. However, the third witness, Orena Atwell, did make such a statement without any objection from appellant's trial counsel. It certainly should have been clear to appellant's trial counsel, at least from that point, that the prosecutor was attempting to prove inadmissible extraneous offenses through the questioning of the "reputation" witnesses.

After this testimony had been admitted, appellant's trial counsel called the appel-

lant's wife to the stand and asked her knowledge of appellant's reputation. During cross-examination, the prosecutor asked her if she had been "with" her husband at the three savings associations about which there had been testimony, and he also asked her about two more savings associations about which there had been no testimony. No objections were made by appellant's counsel to this line of questioning.

 The testimony of the savings association representatives was clearly inadmissible on the issue of appellant's reputation, *Johnson v. State,* 614 S.W.2d 148 (Tex.Cr. App.1981), and had an objection been properly interposed, the trial court surely would have excluded the testimony. *Wright v. State,* 609 S.W.2d 801 (Tex.Cr.App.1980); *Watson v. State,* 605 S.W.2d 877 (Tex.Cr. App.1980). This could properly have been accomplished on voir dire examination outside the presence of the jury. *Crawford v. State,* 480 S.W.2d 724 (Tex.Cr.App.1972).

 Viewing the trial in retrospect, it certainly seems inappropriate for one counsel to have represented two of the three co-defendants. It is also difficult to find any plausible reason for the trial counsel's actions in failing to voir dire the State's "reputation" witnesses before their testimony was presented to the jury. However, we are confined to the record before us, and, on that basis, we can only hold that the failure of trial counsel to request voir dire examination constitutes a single instance of lawyer oversight, and that by the time the true nature of the witnesses' testimony became clearly apparent, he could reasonably have decided, as a matter of trial strategy, that the "cat was out of the bag". At that point, he may have decided that under all the circumstances then present, his most effective rebuttal of the State's witnesses was to demonstrate that they had absolutely no basis for testifying about appellant's reputation.

Whether an accused has received reasonably effective assistance of counsel is to be determined by a review of the total representation, not by focusing upon an isolated failure to object. *Archie v. State,* 615 S.W.2d 762 (Tex.Cr.App.1981). Although trial counsel's actions are difficult to explain, especially in the light of the jury's verdict on punishment, the record does not establish that appellant was denied reasonably effective assistance of counsel.

Appellant's second ground of error is overruled.

The judgment of the trial court is affirmed.

WARREN and BASS, JJ., also participating.